Matter of Gonzalez v Northeast Parent & Child Socy. (2026 NY Slip Op 01443)

Matter of Gonzalez v Northeast Parent & Child Socy.

2026 NY Slip Op 01443

Decided on March 17, 2026

Court of Appeals

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 17, 2026

No. 15 

[*1]Wilfredo Gonzalez, Claimant,
vNortheast Parent & Child Society et al., Respondents. Workers' Compensation Board, Respondent. Law Firm of Alex Dell, PLLC, Appellant.

Alex C. Dell, for appellant.
Patrick A. Woods, for respondent New York State Workers' Compensation Board.

RIVERA, J.:
The question presented on this appeal is whether Workers' Compensation Law ("WCL") § 24 (2), as amended, authorizes the Workers' Compensation Board ("Board") to approve legal fees based on charges against an employer or insurance carrier under WCL 25 (1) (e) and (3) (f) for untimely compensation payments. We conclude that it does not, because WCL 24 (2) only permits the Board to approve legal fees that accord with its counsel fees schedule, which does not include charges under WCL 25.I.
Appellant Law Firm of Alex Dell, PLLC ("counsel") successfully represented claimant Wilfredo Gonzalez on his claim for workers' compensation benefits for a work-related injury. The Workers' Compensation Law Judge ("WCLJ") awarded counsel $2,189.93 in legal fees as a lien on claimant's $13,724.13 compensation award, pending receipt of counsel's fee application.
At a subsequent hearing on counsel's claim that the insurance carrier failed to pay claimant's award within the timelines set forth in WCL 25, the carrier, which belatedly paid the award the day after counsel requested the hearing, conceded that it was untimely. Based on the carrier's concession, the WCLJ imposed a 20% penalty against the carrier on the overdue $13,725.13 award, amounting to $2,744.83, payable to claimant, plus $50 to be paid into the State Treasury, as required by WCL 25 (3) (f). In addition, pursuant to WCL 25 (1) (e), the WCLJ charged the carrier an additional $505.24, payable to claimant, for a late installment, representing the sum of 20% of the $1,026.22 in compensation then due, plus a statutory flat rate of $300.
At the hearing, counsel sought legal fees based on the late payment assessments charged against the carrier under WCL 25 (1) (e) and (3) (f). The WCLJ denied counsel's claim for legal fees based on these amounts pursuant to WCL 24, and the Board administratively affirmed the denial.
The Appellate Division affirmed the Board's decision, agreeing that WCL 24 (2) does not provide for legal fees payable from charges imposed pursuant to WCL 25 (see 232 AD3d 1011, 1012 [3d Dept 2024]). We granted counsel leave to appeal (43 NY3d 937 [2025]).II.
Counsel argues that the Board has long recognized that legal fees may be payable from late payment penalties, and that WCL 24 (2), as amended, does not expressly limit the Board's authority to approve such fees. Counsel further asserts that a claimant's late payment award under WCL 25 is "compensation" under the WCL and thus falls within the WCL 24 (2) fee schedule. Counsel adds that permitting legal fees based on these charges furthers the WCL's legislative purpose of promoting access to justice for injured workers by incentivizing attorneys skilled in handling WCL cases to represent claimants.
The Board counters that the plain text of WCL 24 (2) limits legal fee awards to those enumerated in the statute's fee schedule. The Board further argues that charges assessed for late payments are not compensation but a separate award for a claimant assessed against an employer or insurance carrier. Lastly, the Board maintains that the amount of legal fees generated from an award listed on the fee schedule and the certainty that an attorney will receive those fees are sufficient incentives for attorneys to represent claimants.
We conclude that the Board does not have authority to approve legal fees based on charges assessed pursuant to WCL 25 because the text of WCL 24 (2) establishes a mandatory fee schedule that does not provide for such fees. Our interpretation does not lead to an absurd result. Indeed, the legislative history makes no mention of legal fees based on charges imposed for violations of WCL 25, let alone reflect a legislative concern that attorneys would refuse workers' compensation cases if such fees were unavailable.
III.
"As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself" (Matter of Raynor v Landmark Chrysler, 18 NY3d 48, 56 [2011] [internal quotation marks and citation omitted]). "[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (see State of New York v Patricia II, 6 NY3d 160, 162 [2006]). We "cannot by implication supply in a statute a provision which it is reasonable to suppose the [l]egislature intended intentionally to omit" (Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d 55, 62 [2013] [internal quotation marks and citation omitted]). As we have repeatedly stated, judges may not second-guess the legislature's policy choices or rewrite statutes to reflect their preferred outcomes (see e.g. Xiang Fu He v Troon Mgt., Inc., 34 NY3d 167, 172 [2019]). "The courts do not sit in review of the discretion of the [l]egislature or determine the expediency, wisdom, or propriety of its action on matters within its powers" (id. at 175 [internal quotation marks and citations omitted]). Instead, "[w]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be [*2]omitted or excluded" (Matter of Reclaim the Records v New York State Dept. of Health, — NY3d —, —, 2025 NY Slip Op 03102, *8 [2025] [internal quotation marks and citation omitted]).
The parties agree that the Board interpreted the previous version of WCL 24 to permit legal fees based on a charge to the carrier or employer pursuant to WCL 25 (1) (e) and (3) (f), and frequently approved such fees (see e.g. Fiddler on the Roof, 2006 NY Wrk Comp LEXIS 9726, *5 [Oct. 30, 2006]; City of Rochester, 2012 NY Wrk Comp LEXIS 5931, *10-11 [July 15, 2012]; The Times Herald Record, 2004 NY Wrk Comp LEXIS 12065, *6 [July 15, 2004]; Centre Street Systems Inc., 2022 NY Wrk Comp LEXIS 6967, *3, *5-6 [Dec. 29, 2022]).[FN1] That version of the statute provided that attorneys' claims for legal services "shall not be enforceable unless approved by the [B]oard" and "[i]f so approved, . . . shall become a lien upon the compensation awarded, and upon any moneys ordered paid under an award by the [B]oard" (WCL former § 24 [2021]). The statute further provided that such claims "shall be paid therefrom only in the manner fixed by the [B]oard" (id.).
In 2021 and 2022, the legislature enacted amendments to WCL 24, effective January 1, 2023 (see L 2021, ch 824; L 2022, ch 27). The legislature retained some of the section's original language—including the requirement of Board approval and setting the fee as a lien upon a claimant's compensation award—but it adopted a mandatory legal fee schedule, eliminating the Board's broad discretion to determine whether to approve such fees. WCL 24 § (2) now states, in part,
"Claims of attorneys and counselors-at-law for legal services in connection with any claim arising under this chapter, and claims for services or treatment rendered or supplies furnished pursuant to subdivision (b) of section thirteen of this article, shall not be enforceable unless approved by the board. A written fee application on a form prescribed by the board shall be filed for all legal fees in excess of one thousand dollars ($1,000.00[ ])[.] In the fee application the attorney shall set forth the calculation used to determine the fee and certify that the amount is in accordance with the following provisions. The form prescribed by the board shall not require a description of the services rendered or time records in conjunction with such written application. The attorney shall set forth on the record the same calculation and certification in all oral fee applications of one thousand dollars ($1,000.00) or less. The board shall approve such written and submitted fee application in an amount commensurate with the services rendered and the amount of compensation awarded, having due regard for the financial state of the claimant in accordance with each applicable provision of the following schedule" (WCL 24 [2]).
The fee schedule specifies six categories of workers' compensation awards and their corresponding legal fee calculation (id.).[FN2] For example, WCL 24 (2) (b) provides that an attorney fee "shall be fifteen [*3]percent of the increased compensation" when "an award is made that increases the amount of compensation awarded or paid for a previous period or periods of temporary total or temporary partial disability."
WCL 24 (2)'s clear and unambiguous text contains a detailed list of various awards and corresponding legal fee calculations, and provides no reference to or method for calculating legal fees based on charges against a carrier or employer payable to the claimant under WCL 25. Awarding such fees would be wholly at odds with WCL 24 (2)'s detailed fee schedule, and would contravene the plain meaning of the statute. Thus, WCL 24 (2) limits the Board's authority to approve only legal fees for categories of awards specifically listed therein, and in accordance with the fee schedule. Specifically, WCL 24 (2) states that "[a] written fee application on a form prescribed by the board shall be filed for all legal fees in excess of [$1,000]," and it permits oral fee applications on the record for amounts of $1,000 or less. Both written and oral applications must include a certification "that the amount [requested] is in accordance with" the provisions set forth in the statute (WCL 24 [2]). WCL 24 (2) further provides that "[t]he [B]oard shall approve such written and submitted fee application[s] in an amount commensurate with the services rendered and the amount of compensation awarded, having due regard for the financial state of the claimant in accordance with each applicable provision of the [fee] schedule." By its plain language, WCL 24 (2) provides the only statutory path for the Board to approve legal fees. All applications for legal fees require the attorney's certification that the fee amount requested accords with the statutory fee schedule. Because that schedule makes no provision for legal fees based on charges imposed pursuant to WCL 25 (1) (e) and (3) (f), an attorney seeking legal fees could not make the required certification that their request accords with the fee schedule. In sum, there is no textual support for the Board to grant fees based on amounts due to the claimant pursuant to WCL 25 (1) (e) and (3) (f).
Counsel and the dissent do not assert that counsel's request falls outside the WCL 24 (2) fee schedule. Nor could they, because all fee requests must comply with the certification requirement that "the amount is in accordance with" that schedule (WCL 24 [2]). Instead, they contend that a WCL 25 penalty is "compensation," as WCL 2 (6) defines the term, for purposes of granting legal fees under WCL 24 (2)'s fee schedule. However, their argument is contrary to the plain language of WCL 24 (2) and 25.
It is true the Court has acknowledged that a "liberal construction" of "compensation" under WCL 2 (6) "better advances the public policy in favor of prompt payment of workers' compensation benefits to injured employees" (Matter of Keser v New York State Elmira Psychiatric Ctr., 92 NY2d 100, 105 [1998]). It is also true that "where the same word or phrase is used in different parts of a statute[,] it will be presumed to be used in the same sense throughout, absent any indication of a contrary intent" (Mental Hygiene Legal Serv. v Sullivan, 32 NY3d 652, 659 [2019] [internal quotation marks omitted]; see McKinney's Cons Laws of NY, Book 1, Statutes § 236, at 401-402). However, the clear language of WCL 24 (2) and 25 evinces such a "contrary intent" to narrow the definition of "compensation" when calculating legal fees under WCL 24 (2).[FN3] The legislature's choice of language in WCL 24 (2) cabins the meaning of "compensation" as defined in WCL 2 (6) for purposes of calculating legal fees, treating "compensation" solely as "the money allowance payable to an employee or their dependents" as a recompense for the employee's injury or death (WCL 2 [6]). As such, WCL 24 (2)'s use of "compensation" does not encompass [*4]"the money allowance" (or "penalty") that is "payable to an employee or their dependents" due to an employer's or carrier's violation of the WCL timely payment requirements (id.). After all, the fee schedule's provisions refer to "compensation" specifically in the context of compensation for injuries or death (see e.g. WCL 24 [2] [a] ["When an award is made directing the continuation of weekly compensation benefits for temporary total or partial disability, the attorney's fee shall be one-third of one week's compensation" (emphasis added)],[FN4] [b] ["When an award is made that increases the amount of compensation awarded or paid for a previous period or periods of temporary total or temporary partial disability, the attorney's fee shall be fifteen percent of the increased compensation" (emphasis added)]).[FN5]
Moreover, WCL 24 and 25 (2) treat "compensation," "penalties," and "attorney's fees" each as distinct, mutually exclusive concepts. Section 24 (2) refers separately to an "attorney's fee" and the claimant's "compensation." Under this statutory scheme, a legal fee is determined based on the nature and amount of the claimant's award or benefits, making clear that such a fee is not encompassed within the claimant's compensatory award.[FN6] Moreover, a legal fee is a lien on a claimant's benefits award, and thus logically cannot be part of the award itself. Separately, several other provisions concerning penalties and charges in WCL 25 treat those categories as distinct from compensation (see e.g. WCL 25 [1] [d] ["Such penalty shall be collected in like manner as an award of compensation"]; WCL [1] [e] [stating that, upon a failure to timely pay an installment of compensation, "an additional amount of twenty percent of the compensation then due . . . shall accrue for the benefit of the injured worker or [their] dependents and shall be paid to . . . them with the compensation"]). Counsel and the dissent thus confuse compensation for a claimant's work-related injury with an additional assessment against an employer or a carrier payable to the claimant for their failure to timely pay the claimant's compensation award. It is expressly the former award that may serve as the basis for a legal fee under WCL 24 (2). Put another way, since the Board cannot approve a legal fee until the Board determines the amount of compensation to be awarded to a claimant under WCL 24 (2), and "compensation" for purposes of a WCL 24 (2) fee calculation cannot encompass a WCL 25 charge or "penalty," then the Board cannot approve a legal fee based on awards to claimants under WCL 25.
Similarly unavailing is counsel's argument that the legal fees requested here are permissible specifically under WCL 24 (2) (b), which provides for legal fees paid out of temporary disability awards. According to counsel, because WCL 24 (2) (b) refers to an "increase[ ]" in "the amount of compensation award"—as opposed to mere "compensation"—the additional payment to the claimant under WCL 25 on a temporary disability award serves as an increase to the claimant's compensation award initially granted for the work-related injury. But counsel provides no reason why the legislature would authorize legal fees for late payments of this one category of compensation award—temporary disability—to the exclusion of all others. Such a restriction would be arbitrary and—if we were to accept counsel's policy argument regarding incentives—it would lead to absurd results. Under counsel's own logic, authorizing legal fees solely for late payment on temporary disability awards would disincentivize attorneys from taking certain kinds of workers' compensation cases, an outcome at odds with the general salutary purpose of the WCL to benefit injured workers, as well as the legislature's adoption of a mandatory legal fee structure to improve access to counsel (see Part IV, infra; see also Crosby v State of N.Y., Workers' Compensation Bd., 57 NY2d 305, 313 [1982] [stating that the purpose of the WCL's "broad scheme of compensation" is to provide "a swift and sure source of benefits to injured employees" or their dependents]; Report to the Legislature of the State of New York by the Commission Appointed Under Chapter 518 of the Laws of 1909 to Inquire into the Question of Employers' Liability and Other Matters, at 7, 68 [1910] [concluding that the pre-WCL tort-based system of employers' liability needed "radical change" and that injured workers should "receive such prompt and certain compensation as will keep (them) and those dependent on (them) from destitution"]; Mem from Senator James F. Gaughran to Governor Kathy Hochul, Bill Jacket, L 2021, ch 824, at 5 [asserting that the amendment to WCL 24 "will provide fair compensation and access to justice for injured workers through representation by a qualified attorney"]).
We therefore reject an interpretation that WCL 24 (2) encompasses a claimant's award under WCL 25, which requires that we import those awards into a statutory schedule that lacks any such reference, in direct contravention of the statute's clear and unambiguous language. While we construe "compensation" liberally (Matter of Keser, 92 NY2d at 105), we may not stretch the term's meaning beyond the statutory text.
Even if the statutory text were ambiguous, our well-established canon of statutory construction, expressio unius est exclusio alterius, confirms our reading. Under the canon of expressio unius, "[w]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (see People v Page, 35 NY3d 199, 206-207 [2020], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 240; see also Reclaim the Records, 2025 NY Slip Op 03102, *8 [same]).
We must assume the Legislature was aware when it amended the statute that under the former version of WCL 24, the Board approved legal fees on charges based on late or no payments pursuant to WCL 25 (see Matter of Amorosi v South Colonie Ind. Cent. School Dist., 9 NY3d 367, 373 [2007] ["(T)he Legislature is presumed to be aware of the law in existence at the time of an enactment" (internal quotation marks and citation omitted)]). Indeed, as discussed, in its publicly available decisions, the Board regularly approved legal fees based on a claimant's late payment award under WCL 25 (see e.g. The Times Herald Record, 2004 NY Wrk Comp LEXIS 12065, *6 [July 15, 2004] [approving legal fee payable out of late payment penalty]; Fiddler on the Roof, 2006 NY Wrk Comp LEXIS 9726, *5 [Oct. 30, 2006] [same]; City of Rochester, 2012 NY Wrk Comp LEXIS 5931, *10-11 [July 15, 2012] [same]). This longstanding administrative practice thus formed part of the legal framework against which the legislature amended WCL 24. Nevertheless, the amended WCL 24 (2) does not expressly list a claimant's award pursuant to WCL 25 (1) (e) and (3) (f) as a basis for legal fees in its detailed list of specific categories of awards and corresponding fee calculations. This omission is particularly notable given that WCL 24 (2), as amended, eliminates the Board's prior discretion to approve legal fees by authorizing such fees only "in accordance with" the statutory schedule. If the legislature intended for the Board to retain its authority to approve fees [*5]based on WCL 25 (1) (e) and (3) (f) amounts, it would have directly referenced them in the detailed fee schedule (see Cruz v TD Bank, N.A., 22 NY3d 61, 72 [2013] [noting that "if the legislature had intended to impose (additional) liability . . . it would have said so in the statute"]). We can only conclude that the legislature's omission of legal fees based on charges imposed under WCL 25 (1) (e) and (3) (f) was intentional (see Reclaim the Records, 2025 NY Slip Op 03102, *8 [applying the "irrefutable inference" that "what is omitted or not included was intended to be omitted or excluded" (internal quotation marks and citation omitted)]).[FN7] Thus, the expressio unius est exclusio alterius canon confirms our conclusion that WCL 24 (2) does not provide for legal fees on a claimant's award under WCL 25.IV.
Counsel and the dissent claim that interpreting WCL 24 (2) to permit legal fees based on payments charged pursuant to WCL 25 (1) (e) and (3) (f) furthers the legislative purpose of promoting access to justice for injured workers by incentivizing skilled attorneys with relevant WCL expertise to accept these cases. For the reasons above, counsel's interpretation of WCL 24 (2) is contrary to the text's plain meaning, and that ends the matter (see Patricia II, 6 NY3d at 162 ["(W)here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning"]; cf. Matter of Walsh v New York State Comptroller, 34 NY3d 520, 524 [2019] ["Where the statutory language is unambiguous, a court need not resort to legislative history"]). However, in any case, the legislative purpose that counsel relies on does not support his interpretation of the statutory text.[FN8]
Notably, although legal fees were discussed at length, the legislative history of the amendments to WCL 24 (2) lacks any mention of legal fees based on an employer or carrier's failure to comply with the WCL and timely pay a worker's compensation award.[FN9] Rather, the legislature amended the statute to create "predictability and consistency" in legal fee awards to incentivize lawyers to take on complicated cases from the outset (Mem from Senator James F. Gaughran to Governor Kathy Hochul, Bill Jacket, L 2021, ch 824, at 5). As the amendments' Senate sponsor explained,
"Under [prior] law, the process of awarding fees [wa]s subjective and inconsistent. This limit[ed] attorneys in terms of the type of injured worker cases that they c[ould] undertake due to the risks associated with the unpredictable fee structure. A standard fee for attorneys would create predictability and consistency" (Mem from Senator James F. Gaughran to Governor Kathy Hochul, Bill Jacket, L 2021, ch 824, at 5).
The fee schedule now set forth in WCL 24 (2) achieves that legislative goal by ensuring a set percentage of legal fees for specified categories of injured workers' compensation awards. As the Board [*6]argues, legal fees based on amounts under WCL 25 would not significantly incentivize counsel further because such fees are generally substantially smaller than legal fees tied to the amount of compensation awarded a claimant.[FN10] For example, here, counsel requested a fee of $480 based on the WCL 25 charges against the carrier (approximately 15% of the late payment award) compared to the $2,189.93 fee that the Board approved based on claimant's underlying $13,724.13 compensation award (approximately 16% of that award). Indeed, an attorney must first secure a compensatory award for their client before seeking any legal fee. It is pure speculation that excluding what would necessarily be smaller legal fees based on WCL 25—fees that depend on the mere possibility of a late payment in violation of the WCL—alone would meaningfully disincentivize attorneys from representing injured workers, even in cases where the compensation award appears certain.[FN11]
In the end, counsel's disagreements concern a policy choice about how the WCL may best further the legislative goal of increasing injured workers' access to legal representation. We may not evaluate the wisdom of that choice. We interpret the statute as written, and any change in its language must come from the legislature. As we have explained, WCL 24 (2) does not authorize the Board's approval of legal fees based on additional payments by an employer or carrier to a claimant pursuant to WCL 25 (1) (e) and (3) (f) for their failure to timely pay the underlying compensation award. Therefore, the Board properly denied counsel's legal fee application in this case.
Accordingly, the Appellate Division order insofar as appealed from should be affirmed, with costs.

WILSON, Chief Judge (dissenting):

For more than 100 years, Workers' Compensation Law ("WCL") § 24 provided the Workers' Compensation Board ("the Board") with discretion to award attorney's fees to lawyers for their work in securing late-payment penalties from employers or insurance carriers who failed to make payments to injured workers when those payments were due [FN1]. The Board regularly awarded attorney's fees for that work. Recently, to expand injured employees' access to legal representation, the Legislature increased the baseline level of fee awards to attorneys by establishing a fixed fee schedule to be used when setting the total fee award (L 2021, ch 824, § 1 [effective Jan. 1, 2023]; L 2022, ch 27, § 1 [effective Jan. 1, 2023]). By substituting a canon of construction for the actual words of the Legislature, the majority decides that the Legislature actually meant to prevent the Board from awarding fees to attorneys who undertake the extra work of pursuing delinquent workers' compensation awards, no matter how obstructive the employer or insurer, how onerous the litigation, or how substantial the penalty.
Because the statutory language is clear, the majority's resort to a canon of construction, expressio unius est exclusio alterius, is unjustified. Canons are inapplicable when, as here, the statutory text is clear. Even when statutory language is unclear, canons are a potentially helpful guide, not to be used as the majority does here, in derogation of the legislative history and the Board's longstanding practice.I.
Although the majority complains that WCL 24 (2) provides no guidance as to how to calculate an attorney's fee award for work done to recover late payment penalties (majority op at 7), that is just not so. The text of revised WCL 24 (2), which governs awards of attorney's fees in Workers Compensation cases, is clear. It reads as follows:
"2. Claims of attorneys and counselors-at-law for legal services in connection with any claim arising under this chapter, and claims for services or treatment rendered or supplies furnished pursuant to subdivision (b) of section thirteen of this article, shall not be enforceable unless approved by the board. A written fee application on a form prescribed by the board shall be filed for all legal fees in excess of one thousand dollars ($1,000.00.) In the fee application the attorney shall set forth the calculation used to determine the fee and certify that the amount is in accordance with the following provisions. The form prescribed by the board shall not require a description of the services rendered or time records in conjunction with such written application. The attorney shall set forth on the record the same calculation and certification in all oral fee applications of one thousand dollars ($1,000.00) or less. The board shall approve such written and submitted fee application in an amount commensurate with the services rendered and the amount of compensation awarded, having due regard for the financial state of the claimant in accordance with each applicable provision of the following schedule:
(a) When an award is made directing the continuation of weekly compensation benefits for temporary total or partial disability, the attorney's fee shall be one-third of one week's compensation.
(b) When an award is made that increases the amount of compensation awarded or paid for a previous period or periods of temporary total or temporary partial disability, the attorney's fee shall be fifteen percent of the increased compensation.
(c) When an award is made for schedule loss of use or permanent facial disfigurement pursuant to paragraphs a through t of subdivision three of section fifteen of this article, the attorney's fee shall be fifteen percent of the compensation due in excess of the employer or carrier's previous payments.
(d) When an award is made for permanent total disability pursuant to subdivision one of section fifteen of this article or permanent partial disability pursuant to paragraph w of subdivision three of section fifteen of this article, the attorney's fee shall be equivalent to fifteen percent of the compensation due in excess of the employer or carrier's previous payments, plus a sum equivalent to fifteen weeks of compensation at the rate fixed by the board.
(e) When an award is made for death benefits pursuant to section sixteen of this article, the attorney's fee shall be equivalent to fifteen percent of the compensation due in excess of the employer or carrier's previous payments, plus a sum equivalent to fifteen weeks of compensation at the rate fixed by the board.
(f) When an award is made pursuant to section thirty-two of this article, the attorney's fee shall be fifteen percent of benefits to be paid by the employer or carrier under the approved agreement, except that benefits allocated for future medical expenses shall not be included in the calculation of the fee. However, if the attorney has previously been awarded a fee pursuant to this subdivision, any un-accrued balance of any attorney fees under the foregoing paragraphs shall be waived."
With the exception of subparagraph (f), which is not relevant here, each subparagraph calculates attorney's fees as a specified fraction of "compensation." No calculation more complicated than calculating a percentage is required.
WCL 2 (6) defines "compensation" as "the money allowance payable to an employee or to his dependents as defined in this chapter" (WCL 2 [6]). Late fee penalties meet the legislature's definition: they are (1) money and (2) payable to an employee or his dependents. They are also (3) an allowance, since they are part of the total money that is awarded by the Board (Black's Law Dictionary [12th ed. 2024], allowance [defining allowance as "A share or portion, esp(ecially) of money that is assigned or granted"]). Pursuant to the statutory definition, late fee penalties are straightforwardly part of the "compensation" payable to an employee.
To justify its holding, the majority contends: "The legislature's choice of language in WCL 24 (2) cabins the meaning of 'compensation' as defined in WCL 2 (6) for purposes of calculating legal fees, treating 'compensation' solely as 'the money allowance payable to an employee or their dependents' as a [*7]recompense for the employee's injury or death (WCL 2 [6])" (majority op at 9). But "as a recompense for the employee's injury or death" does not exist in the statutory definition of "compensation"—it is not how the legislature defined "compensation."
The majority's refusal to apply the clear statutory definition of "compensation" in WCL 2 (6) to the equally clear mathematical formulas in WCL 24 (2) is also incompatible with our decision in Matter of Keser v New York State Elmira Psychiatric Ctr. (92 NY2d 100, 105 [1998]). In Matter of Keser, we noted that WCL 2 (6)'s definition of "compensation" should be construed broadly to "better advance[] the public policy in favor of prompt payment of workers' compensation benefits to injured employees."[FN2]
The majority, instead, construes it narrowly, reading "compensation" to be limited to what it terms an "award"—a term not defined in the Workers' Compensation Law. Indeed, if the Legislature had intended the majority's result, it could have used the word "award" and defined it as the majority does in WCL 2 (6) (where definitions of other terms in the WCL are set forth), restricting it to monies payable as recompense for injury or death, or some other narrow formulation. But that is not what the Legislature did, and not how we have previously construed the Legislature's intent in defining "compensation" broadly.
Beyond merely concluding that the definition of "compensation" should be construed broadly, we also held that "neither Workers' Compensation Law § 25 (3) (f) nor Workers' Compensation Law § 2 (6) provides that 'compensation' includes only workers' compensation benefits paid directly to the employee" (id. at 104 [emphasis in original]). We pointedly explained:
"Workers' Compensation Law § 2 (6) defines 'compensation' as money allowances 'payable to an employee,' not monies to be paid to an employee. The Legislature in choosing the word 'payable' rather than 'paid' must have intended for the term 'compensation' to have a broader meaning than merely monies received by or paid to an employee. Courts accordingly have generally construed 'compensation' broadly to encompass more than payments directly to employees, including benefits paid to others due to liens, without changing the nature of the award as 'compensation' " (id. at 104-105 [citations omitted; emphasis in original]).
Although the majority continues at length about the difference between an "award" and a "late fee penalty," what is obvious from the statutory language and Matter of Keser is that awards and late fee penalties are that both are subsumed within "money allowances payable to an employee."[FN3]
In short, the statutory scheme involves nothing more than basic math applied to a clear statutory definition of "compensation." The amount of that award depends on the list in subsection (2), which establishes the percentage of compensation that will constitute the fee award, depending on the kind of [*8]claim at issue. For instance, if an attorney secures a $1,000 award for death benefits under WCL 16, her fee as provided by WCL 24 (2) (e) shall be $150, which is 15 percent of the compensation (plus 15 weeks' compensation at a rate fixed by the Board). If that same employer fails to timely pay, the employer will incur a mandatory late-fee penalty of $200 (WCL 25 [3] [f] [providing for 20 percent penalty]). Because late fees are part of compensation, the total compensation is now $1200, and the attorney's fee would be $180 instead of $150.II.
Why reject the Legislature's plain definition of "compensation," which we have previously affirmed, insisted must be construed broadly, and which is quite simple to apply? The majority offers a few ancillary reasons before reaching its ultimate point. First, the majority says that the Legislature's use of multiple terms—compensation, penalties, and attorney's fees—shows these are all "distinct, mutually exclusive concepts" (majority op at 10-11). The mere fact that these concepts are distinct does not establish that they are mutually exclusive, and the majority cites nothing to establish that they are mutually exclusive. Indeed, the command to interpret "compensation" broadly directs otherwise. Of course, some distinct concepts can include others: a basketball player's total points scored in a game, as well as points scored on free throws, three-pointers and two-pointers, are all distinct concepts, yet the first subsumes the last three, just as "compensation" subsumes penalties, attorney's fees and other liens "payable" to an employee even if not paid to that employee. Something distinct from the whole can constitute part of a whole, even if it is determined based on the size of the whole.[FN4]
Next, the majority posits that because "a legal fee is determined based on the nature and amount of the claimant's award or benefits" it is impossible that this fee could be part of "the claimant's compensatory award" (majority op at 10)[FN5]. Once again, the majority is adding the word "compensatory," which like its cousin "recompense," does not exist in the statutory definition of "compensation." In essence, the majority is creating a different definition of "compensation" that ignores the statutory definition. The statutory definition contains no restrictions on what the monies are paid for, but only to whom they are payable.
The majority alternatively claims that because "a legal fee is a lien on a claimant's benefits award, . . . [it] logically cannot be part of the award itself" (majority op at 10). We rejected exactly that proposition in Matter of Keser. And logically, the exact opposite of the majority's statement is true: As a legal matter, a lien is a portion whatever it is attached to; the common law has long recognized that an attorney has a charging lien for services that may be satisfied against the judgment recovered in that matter (see e.g. Matter of Heinsheimer, 214 NY 361, 364-365 [1915] [Cardozo, J.]). When attached to a home, a lien is effectively part of that home—which is why it travels with it even if the home is sold and (generally) even survives a debtor's bankruptcy (Carman v Eur. Am. Bank & Tr. Co., 78 NY2d 1066, 1067 [1991]).
The majority's next step is to resort to the legislative history. Because the statutory language is perfectly clear, we should apply our "our first-order rule that the 'text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning' " (Xiang Fu He v Troon Mgt., Inc., 34 NY3d 167, 172 [2019], quoting Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006] [citation omitted]); see also McKinney's Cons Laws of NY, Book 1, Statutes § 76 ["Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation"]). The majority justifies resorting to the legislative history because counsel for Mr. Gonzalez relies on it, (majority op at 15 n 8), but I know of no authority allowing us to disregard plain statutory language because a party contends that the legislative history supports that clear language.[FN6]
In any event, the straightforward reading of WCL 2 (6) and 24 (2) completely harmonizes with the legislative purpose. As the majority recognizes, WCL 24 (both before and after recent amendments) provides for attorney's fee awards because those fees incentivize attorneys to take cases on behalf of injured workers, who are often unable to pay attorneys up front (majority op at 12). The problem with WCL 24 before the 2021 and 2022 amendments was that the statutory scheme "d[id] not allow attorneys to be compensated for the true amount of services rendered," and attorneys often did not take on complicated cases "because the amount of time that it would take to successfully resolve their case would be exorbitant compared to the fee the attorney would be entitled to recover" (Mem from Senator James F. Gaughran to Governor Kathy Hochul, Bill Jacket, L 2021, ch 824, at 5). Previously, attorneys lacked a sound way to predict what proportion of a compensation award they would receive at the end of a case, so the Legislature established the simple set of formulas in WCL 24, which provides a reliable rate to attorneys in accordance with the level of services rendered. Those formulas achieve the public policy objective of increasing "access to justice for injured workers through representation by a qualified attorney" while (and by) ensuring those attorneys receive "fair compensation" (id.). Given those aims, it is simple to see how the plain language of WCL 24 vindicates each goal: because the late fee penalty is part of "compensation," it not only ensures attorneys will be compensated for the work they perform in securing late-fee [*9]payments—promoting the goal of compensating attorneys fairly for their work—but also at a reliable rate as set out in WCL 24 (2), which promotes the statutory aim of predictability.
The majority characterizes the Legislature's aim as ensuring "predictability and consistency" of fee awards (majority op at 15). Although a zero fee is predictable, it is no more predictable than the fees arrived at by applying the Legislature's definition of "compensation" to the formulas in WCL 24 (2). Zero, however, is not compatible with the fact that the Legislature concluded that attorneys were being undercompensated for the work they performed; I see no evidence that the Legislature mentioned anything about excessive fee awards.
Thus, with no basis in statutory text or legislative history, the majority concludes the Legislature decided that attorneys should not be compensated for any additional, genuinely necessary work they perform after an award has been determined, no matter how much work is required afterward to actually secure payment. That conclusion directly contravenes the purpose of the recent WCL 24 amendments and the WCL generally, to say nothing of longstanding historical practice. For more than 100 years, the Board possessed the power to award attorney's fees for work performed in securing late penalties against delinquent employers and insurers (majority op at 13-14 [noting past awards for attorney's fees on late penalties]). The majority makes much of the lack of any mention of attorney's fees on late penalties in the legislative history (majority op at 15), but silence demonstrates an intention not to disturb a longstanding status quo that permitted such awards [FN7]. There is nothing "difficult to square" between practice and the amended language in WCL 24 (2) and "comprehensive nature" of the fee schedule (majority op at 15 n 9); indeed, nothing in the textual portion of WCL 24 granting the Board discretion to award attorney's fees was changed by the recent statutory amendments.
The majority asserts that the amount of attorney's fees available on a late penalty would be too small to figure into an attorney's determination as to whether to take a case in the first instance. That unsubstantiated claim is both counterintuitive and a policy question for the Legislature, not for us. Purely as a matter of basic economics, any potential increase in compensation for attorneys will induce lawyers to take more cases at the margin, whereas telling attorneys that they will not be compensated for any work they do to collect a delinquent judgment will, on average, disincentivize them, particularly if a notoriously recalcitrant insurance carrier is involved. More importantly, though, it is not our business to determine that the amount set forth in the text of WCL 24 (2) is not a sufficiently great incentive, and then use that policy determination to reject the statute's language.[FN8]
The core of the majority's analysis is its reliance on a canon of construction, expressio unius est exclusio alterius (majority op at 12-14). The majority says that "[w]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (majority op at 12-13, quoting People v Page, 35 NY3d 199, 206-207 [2020]; see McKinney's Cons Laws of NY, Book 1, Statutes § 240). But as with legislative history, resort to canons of construction is inappropriate, because WCL 2 (6) and [*10]WCL 24 (2) are not ambiguous: they set out a clear, simply calculable formula for determining the amount of fees applicable to "compensation" as defined by the Legislature. By their terms, canons of construction are "interpretative aid[s]" to be consulted only when statutes are unclear (Stefanik v Hochul, 43 NY3d 49, 69 [2024]), and cannot be used to vary the terms of a statute unless the terms lead to an absurd result (Bender v Jamaica Hosp., 40 NY2d 560, 561-562 [1976]), which neither the majority nor the Board claims would follow from a plain reading of the statute. But even were we to, for the first time ever, consult the interpretive aid of expressio unius where a statute is unambiguous, we would not use it in contravention of the statute's purpose (John P. v Whalen, 54 NY2d 89, 96 [1981] [expressio unius "must not be utilized to defeat the purpose of an enactment or to override the manifest legislative intent" [citation and quotation marks omitted]). That is precisely what the majority has done here.***
We emphasized in Matter of Burns (55 NY2d 501, 508 [1982]): "As a remedial statute serving humanitarian purposes, the Workers' Compensation Law should be liberally construed." The majority takes liberties with the construction of the Workers' Compensation Law, but that is not the same as liberal construction.
Order insofar as appealed from affirmed, with costs. Opinion by Judge Rivera. Judges Garcia, Singas, Cannataro and Halligan concur. Chief Judge Wilson dissents in an opinion, in which Judge Troutman concurs.
Decided March 17, 2026

Footnotes

Footnote 1: The dissent states that, prior to the recent amendment to WCL 24, the Board had discretion to award legal fees based on late payment charges "[f]or more than 100 years" (dissenting op at 1). While that may be true, the dissent cites nothing to suggest that the Board regularly awarded such fees throughout that full 100-year period.

Footnote 2: The Board is authorized to approve legal fees for each category as follows: (1) one-third of one week's compensation based on a temporary total or partial disability award; (2) fifteen percent of an award increasing a prior compensation award for a previous period of temporary total or partial disability; (3) fifteen percent of compensation due in excess of previous payments for a schedule loss of use or permanent facial disfigurement award; (4) fifteen percent of compensation in excess of the previous payments for a permanent total disability or permanent partial disability award, plus fifteen weeks of compensation at the rate fixed by the board; (5) fifteen percent of compensation due in excess to previous payments for a death benefits award, plus fifteen weeks of compensation at the rate fixed by the board; and (6) fifteen percent of benefits payable under an approved agreement, excluding future medical expenses; however, if the attorney has previously been awarded a fee pursuant to this subdivision, any unaccrued balance of any previously approved attorney's fees under these categories is waived (WCL 24 [2] [a]-[f]).

Footnote 3: The dissent's claim that the text of WCL 24 (2) is clear and in fact means the opposite of what the Court says its means, fails to address the absence of any reference to late payment charges under WCL 25 (1) (e) and (3) (f) in the comprehensive and detailed fee schedule (dissenting op at 2, 3, 5, 9, 13).
Footnote 4: To the extent the dissent does not understand our use of the term "award" in this context (dissenting op at 6), the legislature clarified what it meant by "award" in WCL 24 (2).
Footnote 5: The dissent argues that "compensation" includes late payment penalties in part because Matter of Keser v New York State Elmira Psychiatric Ctr stated that WCL 2 (6)'s definition of "compensation" should be construed broadly (dissenting op at 5-6, citing 92 NY2d 100, 104-105 [1998]). However, Matter of Keser did not treat penalties as compensation, despite the fact that penalties were central to that case. Rather, the Court affirmed that "compensation" should be liberally construed merely to include "benefits paid to others due to liens" and not just benefits paid to claimants (92 NY2d at 105). Accordingly, when compensation is not timely paid—even if such compensation is owed to an employer as reimbursement rather than to a claimant—such compensation is subject to a late payment penalty under WCL 25 (3) (f) (id. at 106). Further, even though Matter of Keser instructs us to construe "compensation" broadly, Keser predated the legislature's amendment to WCL 24 by approximately twenty-five years. As always, the legislature is free to amend statutes as a general matter and to use terms in particular ways that deviate from prior judicial interpretation.
Footnote 6: The dissent confusingly argues that "something distinct from the whole can constitute part of a whole, even if it is determined based on the size of the whole" (dissenting op at 8), and its examples are inapt and shed no light on the dissent's meaning. Overtime is payment for a worker's labor performed beyond the standard workweek and not a penalty for the employer's failure to pay the worker's earnings. Overtime is compensatory whereas a penalty on an employer is not. Nor does the use of sports terminology illuminate the dissent's meaning, which assumes that the reader is familiar with and appreciates the references. 

Footnote 7: The dissent's assertion that our conclusion "contravenes . . . longstanding historical practice" ignores that the legislature is free to end longstanding practices by statute—as it did here by amending WCL 24 (2) (dissenting op at 11-12).

Footnote 8: The dissent asserts that we "disregard plain statutory language" and "resort" to the legislative history (dissenting op at 9-10), as if to suggest that our analysis lacks doctrinal foundation. To the contrary. We only refer to the legislative history in response to counsel's argument in order to confirm that our reading of WCL 24 (2) aligns with the legislative purpose. Indeed, the Court routinely examines the legislative history to confirm its reading of unambiguous statutory text, as we do here (see e.g. Colon v Martin, 35 NY3d 75, 80 [2020]; Alifieris v American Airlines, 63 NY2d 370, 376 [1984]; People v Suber, 19 NY3d 247, 253 [2012]).
Footnote 9: Though the dissent asserts that legislative "silence demonstrates an intention not to disturb a longstanding status quo that permitted such awards" (dissenting op at 12), this argument is difficult to square with the clear language of amended WCL 24 (2) and the comprehensive nature of the statute's fee schedule.

Footnote 10: We are not using a "policy determination" regarding incentives "to reject the statute's language" (dissenting op at 13). Instead, we arrive at our holding based on the clear language of the WCL, and have merely discussed the statute's economic incentives as being compatible with our reading of the text's plain meaning. Again, if the legislature had intended for the Board to retain its authority to approve fees based on WCL 25 (1) (e) and (3) (f) amounts, "it would have said so in the statute" (see Cruz, 22 NY3d at 72). The legislature is also free to revisit that choice.
Footnote 11: During oral argument, counsel asserted for the first time that restricting the Board's authority to approve legal fees based on charges pursuant to WCL 25 would disincentivize attorneys from representing a claimant who secured a compensation award pro se. In a post-argument submission, the Board represents that claimants have appeared pro se in approximately 8% to 9% of hearings annually since 2021. The Board further states that its search of Board Panel Decisions issued pre- and post-amendment did not reveal a single case matching this hypothetical, and opines that if such a rare case arises the Board would have the authority to award a legal fee upon reissuing the underlying compensation award. Although we take no position on whether the Board is correct in this regard, we note that nothing in the legislative history refers to attorneys turning down pro se claimants in such a hypothetical circumstance, or to the scope of the Board's authority in such a case. Accordingly, if any such problem exists, it would be for the legislature to address.
Footnote 1: The language granting the Board the power to award attorney's fees—providing that claims for attorney's fees "shall not be enforceable unless approved by the board"—has remained unchanged since at least 1922 (compare L 1922, ch 615 with L 2021, ch 824 § 1 & L 2022, ch 27, § 1 [both eff. Jan. 1, 2023]). The statutory language imposing an automatic 20% penalty on employers (or insurers) that do not timely pay an award traces back to the language in the 1922 statute (compare L 1922, ch 615 with WCL 25 [f]).

Footnote 2: The majority's contention that Matter of Keser's direction to construe "compensation" broadly has been rendered obsolete by the recent amendment of WCL 24 depends on the proposition that WCL 24 "use[s] terms in particular ways that deviate from prior judicial interpretation" (majority op at 9-10 n 5). That contention suffers from two flaws: WCL 24 contains no "particular" terms that suggest a narrow construction, but rather a broad statutory definition of "compensation" that existed both before and after Matter of Keser; and the direction to construe the Workers' Compensation Law broadly is bolstered by its history, in which the voters in 1913 amended the Constitution to reverse a decision of this Court and grant the legislature broad power to enact remedial legislation to aid injured workers (see New York Cent. R. Co. v White, 243 US 188, 195-196 [1917]).

Footnote 3: Indeed, the situation in this case much more straightforwardly fits the statutory definition that did the situation in Matter of Keser, in which the bulk of the payment was made from one state agency to another by way of a bookkeeping entry, not to the claimant.

Footnote 4: A commonplace example is overtime pay, which is typically based as a percentage of a worker's ordinary wages. Even though the overtime pay is based on the ordinary wages, the employee's compensation includes both. The majority insists overtime is a poor analogy because, in its view, "[o]vertime is compensatory" (which, in its view, means it is compensation) since it is "payment for a worker's labor performed" and "not a penalty" (majority op at 10 n 6). Again, that conception of compensation—as something that must be tethered to what an employee actually earned by her labor and not a "penalty"—is the majority's own invention, unmoored from the Legislature's definition of the term.
Footnote 5: The majority confusingly restates this same point in different words in this same paragraph, contending that "compensation for a claimant's work-related injury" must be completely separate from "an additional assessment against an employer or a carrier payable to the claimant for their failure to timely pay the claimant's compensation award" because the latter cannot be calculated without reference to the former (majority op at 11). 

Footnote 6: I do not believe that the majority's resort to legislative history (majority op at 15 n 8) and reliance on a canon of construction (id. at 15 n 9) reflects any fundamental disagreement about the weight of canons or legislative history when statutory language is clear. I do take issue with the majority's view that the statute clearly denies attorney's fees incurred in recovering a late fee and in its resort to legislative silence to conclude the legislative history supports its view. Because I view the definition of "compensation" in WCL 2 (6) as clear, and its incorporation into WCL 24 (2) as equally clear, I would here abide by the principle: " 'in the construction of statutes . . . if the language thereof is unambiguous and the words plain and clear, there is no occasion to resort to other means of interpretation' " (People v Francis, 30 NY3d 737, 745 [2018], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92, Comment).

Footnote 7: The majority contends that if the Legislature meant to keep that long-lived practice in place, simply, "it would have said so in the statute" (majority op at 16 n 10). But the opposite is more likely: had the Legislature intended to overturn a century of historical practice, one would have expected it to say so—if not in the statute, then somewhere in the legislative history—but there is not even a shred of such a thought anywhere. 

Footnote 8: Likewise, the majority's assertion that attorney's fees are too remote to figure into an attorney's decision to "take on complicated cases from the outset" is speculation contrary to basic economic principles and untethered to anything in the legislative history (majority op at 15). Indeed, the majority's theory would apply to any of the sources of attorney's fees in these cases: an employer's delinquency no more uncertain than how long a case will take to resolve, which administrative judge will decide it or whether an employee will prevail at the Board. What matters as with any factor is not the precision in knowing its likelihood, but the possibility that the attorney's work might ultimately be compensated.